Yes, thank you, Your Honor. Frank Weiser on behalf of the plaintiff and appellate Philip Killgore. I will get to the Fourth Amendment issue. I do believe that's a question of first impression before the circuit. But I do want to very, very briefly touch on a few procedural points. There was an argument made in the answering brief that there was somehow a jurisdictional defect in the notice of appeal by not naming the prior collateral adverse orders by the district court. Two cases were cited at page 16 in that brief, Lawley v. County of Orange and Torres v. Ninth Circuit case and Torres v. Oakland Scavenger Company, which is a Supreme Court case. Both cases stand for the exact opposite conclusion. And I would just state that this is an appeal for the final judgment, isn't that right? That's correct. And any adverse prior collateral orders would be subsumed with that. But those cases also clearly state that if you don't name the individuals that you're appealing against, that can be strictly construed against the notice of appeal. But if it's just not naming the prior order, that's liberally construed in favor of the appeal. So rule 3A1 capital B is strictly construed. That's the individuals. And 3A1 capital A, excuse me, the individuals, if those are not named, that's strictly construed. But subsection B is liberally construed. So I don't think those arguments follow through. There's another case, Lade v. Askew, a subsequent Ninth Circuit case at 558 F3rd 1019 at 2008, which discusses those two cases. As to the issue of an exhaustion on the due process argument, it's not fairly well established. It is well established by the case v. Board of Regents, a 1982 U.S. Supreme Court case, that there is no general exhaustion requirement in 1983 cases. But with specific to the due process issue, I don't think that's applicable when it comes to an issue as to the integrity of the hearing itself. I know you're on the phone, so I'm sorry to interrupt you. It's harder when you can't see us. But I just had a fundamental question that sort of goes through a couple of these arguments. How is it that Lavender Massage was able to operate without a conditional use permit from 2013 to 2017, and then again from 2018 on? Why did they need to get a conditional use permit? How was it able to operate? Yeah, yeah. No, it was operating under a business license from 2013 to 2017, and then again after the conditional use permit was withdrawn or revoked. And so I'm just wondering, what did the conditional use permit do? Did it allow more therapists? Did it allow some extra use? Well, the conditional use permit allowed it to operate as a massage establishment, subject to certain conditions. Well, but wasn't it already operating like that before it had the conditional use permit? As I understand it, your honor, there was some change in the law. It had been operating prior to the adoption of a conditional use permit ordinance that was adopted generally for massage establishments by the city sometime, I think, in 2015 or 2016. I was not counsel of record at that time. I came in afterwards after the CUP or conditional use permit had been established. Well, but it was still operating even after the conditional use permit was withdrawn and revoked in 2018. It continued to operate. And that's one of the things that really confuses me about your argument is it didn't shut it down. So that, you know, you say, well, they threatened to actually shut us down, but they already took away your conditional use permit. So I don't know what impact that had. Well, but it was not judicially final. So there was an administrative appeal. They revoked the permit in the administrative process, but certainly there was nothing that was judicially final. We were contesting that. Eventually they did close down and they are closed now. They are not operating now. And that was as a result of the subsequent actions after the revocation of the permit because of the threats and the various citations, the multiple citations that Mr. Kilgore obtained. But nothing was judicially final until that judicial finality vests. It's our contention they were allowed to operate. But Mr. Kilgore made a decision because of the threats that were made to him and the citations that he would close down, and he did close down shortly after the citations were given and the inspections sometime, I believe, after the revocation. So, counsel, let me, that's a good segue for my question about just trying to really understand the nature of the Fourth Amendment injury here. I understand that in the complaint, your client alleged that there were three searches of the business without a warrant. Is that correct? That's correct. And is the injury then, because under the CUP, they were allowed to do two a year. That's correct. Only two. Right. So is the injury then just because they did a third? Is that the injury we're focusing on? And also the timing of the searches. I think the issue with the reasonability of how those inspections were conducted, they were conducted, I believe, February 22nd, 25th, and 27th of 2018. So that would also be the issue of also go to reasonableness of the inspection, where they conducted the searches. It's our contention that even though the CUP, there was a CUP in place, but still nothing in that CUP talks about where or how extensive the inspections could be. Isn't that sort of your job? I mean, wouldn't we have to say that you consented by taking on the CUP that just said we can come and inspect twice a year? Wouldn't you have consented to those two? But I don't think the CUP is definite about what exactly they can inspect. So I think that's a defect from the city and how they drafted the CUP. And I would cite that there's no limit in the CUP of what they can inspect. So does that mean that the... I think that cuts against you though, doesn't it? Well, I don't think that gives them carte blanche, not either other under the case law. And under this circuit's case law, I was going to cite a case, Tucson Women's Eden Clinic versus Eden, which was a closely regulated industry abortion clinic in which NYSERC had found a 379 F-3531 2004 case that just because it was closely regulated and they had a right to come in and inspect didn't mean there can't be a limit on discretion. So that doesn't mean they can go into the rooms while the therapists are giving the massages. I mean, I don't see that that gives them carte blanche to just march in there and walk in there. So Mr. Wise, if I could summarize that, it seems to be what you're arguing is that in terms of a Fourth Amendment injury, you're saying that there was a third search that the CUP didn't allow under any circumstances, number one. And then number two is that the searches as they were conducted were broader than the CUP would have permitted. So you're kind of arguing two different forms of injury. Is that correct? That's correct. Also, I would like to point out, Your Honor, the search warrant issue about the county, although that was something that we abandoned the claim against the county itself, but the city was involved with that also. So that search comes into play also. That was a fourth search, right? So there was one with a warrant and then three without a warrant. That's correct. But there was an argument that whether in fact the false pretenses or the undercover operation, they got the warrant after the undercover operation. So we argued that that was also part of it. So counsel, let me kind of go down on this then. So now that I have a better understanding of what the injury is you're alleging, you said this is a case of first impression. I think you're right. I will say, though, that when Mr. Lost stands up, he's going to point us to a whole bunch of cases that say this is a closely regulated industry. We've got two state Supreme Courts. We've got the Fifth Circuit. We have a California appellate court decision in California saying that this is a closely regulated industry. Seems to me... So why shouldn't we just follow all of those cases? I think you pointed us to one district court case from like 1974. Do you have anything other than that? Yes, Your Honor. And I think the Patel case that I litigated, I was counsel of record. I litigated and argued it on bond before the circuit, the city of LA versus Patel case. I think it's very clear the U.S. Supreme Court had the same issue before regarding the motel industry. That ordinance, that motel search ordinance was in fact to curb the exact same vices that these ordinances are in the massage industry for alleged prostitution and crime activity. But the Supreme Court in both this circuit and the Supreme Court rejected that argument and said, no, the closely regulated industry is a very closely defined industry. And there's only been four cases, the firearm industry, liquor industry, that they've applied that to. The same type of harms that could come up in a motel industry are the exact same thing that could come up. I mean, there's no question that you can have prostitution and criminal activity at motels. And often those issues do come up. That doesn't make it a closely regulated industry. The cases Mr. Law and the city cited were all cases before Patel. I believe that Patel is binding. That's a 2015 U.S. Supreme Court case and an en banc case leading up to it by this circuit in Patel. So I believe that those cases are now binding. No, I appreciate it. I want to make sure you have some time. But Patel was a Ninth Circuit case. And there are a number of Ninth Circuit cases before Patel that apply this doctrine to a wide range of industries. And Patel didn't say anything like those cases are all overruled or all wrong. But I do think that the facts of the search ordinance in Patel and the Supreme Court assumed that that ordinance was under the special needs doctrine. What it rejected was is that even with special needs, it still had to have procedural safeguards and judicial review. And it rejected the argument that it was just because of the pervasiveness of the regulations or the potential of the criminal activity that that made it a justice. Scalia argued vigorously in his dissent that it was close and regularly in the industry. But the majority rejected that. And I would argue that whatever prior Ninth Circuit case authority that may have applied in a variety of contexts, the Patel case now says that's very, very, very circumscribed to those four industries. And so I would argue that that is the controlling case law. Very well. Do you want to reserve the rest of your time? Yes. Thank you, Mr. Weiser. All right. All right. Let's hear from Mr. Law. Thank you, Your Honor. I'll just dive into the Fourth Amendment search claim immediately. As a preliminary matter, Appellant at all times understood that inspections would take place as part of his business with or without a warrant. The inspections were required as part of the conditional use permit process. He was required to execute. There were only two that were required. So we I mean, we we do have to we can't just say he consented as part of the conditional use permit. Right. You agree we have to address whether this was a closely regulated industry. Oh, indeed, Your Honor. I'm just saying that this notion that Appellant never gave his consent for these inspections that does appear in his opening brief. I mean, that is not a viable argument because he expressly consented to these inspections. He signed a. Well, but not all of them. I think that's the point, right? He only consented to two. So we have to figure out what to do with the. Oh, I see. Your Honor is speaking about the number of inspections that are permitted. Well, I just. I mean, I think unless there's an argument that they were all permitted under the. Well, I just look at I just looked at Resolution 1764. That's Excerpt of Record 13738. And I'm on page 138. The exact language is the owner must allow two inspections a year by the Community Development Department to ensure compliance of all conditions of approval. So I wouldn't necessarily say that that's limited to two, especially when there's ongoing violations that are known. So I believe that any police activity beyond the second inspection visit was permitted under the ordinance to ensure that there was compliance with the conditional use permit requirements here. Let's assume we let's assume we disagree with you on that, Mr. Long. You could get back to Judge Nelson's question about don't we have to address this as a closely regulated industry? Yes, Your Honor. So I think the District Court got that correct. That because it's a closely regulated industry, that warrantless searches were permitted. The District Court warned Appellant's Counsel many times during the leave to amend portions that violate that he has to plead fax for a violation that meets this standard. Instead of pleading more fax in the Second Amendment complaint, the Third Amendment complaint, Appellant ignored those warnings and then just simply said, well, lavender massage is not a closely regulated industry and simply relies upon the Los Angeles City case versus Patel. Is that just positive? Let's just assume we didn't find that it was a closely held, or excuse me, closely regulated industry. Would the arguments, I guess the argument would be two were consented to, but because violations were found, we were justified even if it wasn't a closely regulated industry and conducting a third based on the violations that were found previously. Yes, I believe so, Your Honor. Does that stand up or what's your best prop case for that? Well, yes, I believe just by the expectation during the conditional use permit processing that inspections would take place with or without a warrant. I think that that is an expectation that we should be holding Appellant to today, especially when there are violations. Well, what if it had been 10? What if it had been 15? Well, Your Honor, those kinds of facts are not pledged in the Third Amendment. No, but we got to decide the law. And I mean, would your position be the same thing if there'd been, say they came in every day for for inspections and so we're going to come in and inspect you every day? I mean, at some point, I'm not, it doesn't seem reasonable unless it's a closely regulated business, I suppose. Yes, so certainly, Your Honor, I'm not suggesting that I'm making a blanket statement here saying 15 days every day straight is reasonable, certainly, but that's not the facts that are presented here today. It's three, maybe arguably one that's above the two minimum that's set forth in this resolution. But again, I don't see the resolution capping the amount of inspections that are necessary to ensure compliance with the ordinance. But it seems to me, Mr. Law, to make that argument, I have appreciation what you're trying to say, is that that's a factual question. And this was a motion to dismiss. And to the extent there was some sort of expectation or understanding, it seems to me that would have to come out in a summary judgment motion. It seems to be a little premature for us to be making those types of factual assumptions, don't you? Wouldn't you agree with that at this stage? No, Your Honor, I would not because if you look at, and so I have to jump back a little bit into the closely regulated industry. When you look at the case of Los Angeles vs. Patel, that did not involve comprehensively subjecting hotel owners to the regulatory requirements and procedures that we're faced with here today. Regulations, for example, on business advertising, massage therapist, dress codes and qualifications, certifications, licensing, none of that appears in Mr. Weiser's case. Instead here, and the record is replete with the resolutions and the conditional use permit process documents that are before this Court, there were stringent registration requirements. Of course, there was this stringent conditional use permit application process. There were reasonable inspections of any massage establishment during regular business hours that each of the permit holders had to agree to. And then there were also administrative citations that was expressly allowed for under this ordinance. And so all of that shows that this, the District Court did get this correct, and this was a closely regulated business. Since 1977, California state law has authorized local governments to regulate massage establishments. And so I would suggest what you mentioned before about other circuits and courts agreeing that warrantless searches are proper in the massage context. That includes the Supreme Court of Indiana, the Fifth Circuit, the Michigan Supreme Court, and then the California Court of Appeal, Third District in Kim vs. Dolch that said warrantless searches are permitted in the context of massage businesses. So for those reasons, plaintiff's Fourth Amendment claim is just simply not supported by facts that can show any sort of constitutional violation. So Mr. Weiser's argument relying on Patel seems to be a factual comparison of the circumstances of hotel operations and massage services. But is there anything in Patel that makes blanket statements about the standards we apply? For example, does it overrule New York vs. Berger in any way? Other than, you know, the argument that it's factually analogous, is there something in the language of Patel that we have to confront that would preclude us from finding it's a closely held business? Or excuse me, closely regulated? I don't believe so, Your Honor. I mean, I bet the Patel decision, that case considered a Los Angeles municipal code that required hotels to capture certain information for guests that resided on the hotel, like names, address information, how many people were with the party, car information. And so this is the information, the registration information that the guests are signing in, and they're giving their license plate on their car. The police want to gather this information because they can detect, occasionally they can detect some criminal activity. But it seemed like that implicated, you know, the rights of the patrons in a way that's different from what's at issue here. Indeed, Your Honor, and that's why I believe that it is distinguishable here. And as I just recounted, I mean, the extraordinary efforts that a CUPA holder has to endure in order to be able to properly conduct an operation or conduct a massage business, it's much more stringent than this hotel record keeping department that's at issue in Mr. Weiser's other case. And for that reason, I mean, it's not a good comparison in terms of what should be considered a closely regulated industry or not. And then Mr. Weiser has mentioned a couple of times that it's that kind of analysis is constricted to four specific businesses or so. I couldn't find it. I can't find it right now immediately, but our responding brief says that that is not a case. I think one of the cases could be the United States versus 4,432 master cases of cigarettes. That and another matter shows that it's more expensive than just these four closely regulated industries that Mr. Weiser is advancing. And so for all those reasons, this is a closely regulated industry. And the warrant research is presented before the amendment were justified. If your honors would like me to address any other... Maybe you could flesh out a little more. I mean, maybe it ultimately doesn't matter, but I was, I'm still confused as to how this business was there. Why did they need a conditional use permit? Is it that the regulations changed? And so from 2013 to 17, he could no longer do what he was doing previously, unless he got a conditional use permit. Is that the answer? Yes, your honor. I mean, I believe a finance council's representation was true that there was a change in the city municipal code that sort of triggered this need to apply for and obtain a conditional use permit in order to run a business. But even then the pleadings do show that once that was revoked, apparently business was still being conducted on the property. Well, that's what I'm confused about. His response is, and it goes sort of to the threats that were made because apparently the threats that were being made were, well, we've already taken away your conditional use permit, but now we'll go in and take away your business license. And so it just left me with some confusion as to, I mean, was there any, once the conditional use permit was revoked, was there a change in what he could do in his business operations with only a business license? After the conditional use permit was revoked, he would not be able to conduct a massage operation on the property. Well, but he clearly was, and the city was in there still threatening then to shut him down. And I was thinking, well, I thought you did shut him down when you took away the conditional use permit. So I just didn't understand. Is it because it wasn't final? Oh no, the conditional use permit, I think it's the term condition might be misleading there. I mean, it never becomes final. No, no, no, no. The revocation. Is that why it wasn't fully shut down? Well, no. I mean, so at that point there would be no directive or permission to conduct a massage. That's what I would think. But Appellant can continue to do that. All right. So you can't really answer the question as to why it was still operating in 2018. No, Your Honor. But if I may make a statement on the term threat that we keep using here, that the respondents threaten them. I see the pleadings and these threats that Appellant raises. I mean, all that is, is essentially city individual defendants doing their job and issuing lawful citations. It sounds like you're saying, hey, if you don't stop engaging in criminal behavior, then we're going to shut you down. I'm not entirely sure how much. Well, yeah, there are certainly no factual allegations made that, you know, that, that they did anything else other than trying to enforce the ordinance and enforce some of the citations that they were already issuing based on these illicit activities. For purposes of the First Amendment and retaliation claim, there certainly are no factual allegations that show, you know, deterrence was a substantial motivating factor in any of the statements made by Officer Martinez or any of the other individual defendants as required. The city would have taken these enforcement measures in any event, Your Honor. So there wasn't any animus. It was just carrying out normal business, Your Honor. And so when you, the term threat to me does not appear to be correct in this context, especially because there are no facts that demonstrate that free speech was chilled in any way or deterred in any way. In fact, I would argue, Your Honor, that we're sitting here today on the Zoom based on Appellant's exercise of free speech. I think Judge Beatty might have had a question. I just think, thank you. I know it's difficult over the record that one of the council members made some disparaging comments about Mr. Kilgore, something to the effect of, why did we ever give this guy a license in the first place since he has a criminal history? Why doesn't that render the proceeding unfair? That seems like a fairly, well, it seems like an unfair thing to say. I mean, if Mr. Kilgore qualified for his license and, or his permit, and he paid his debt to society for whatever his past criminal history, that doesn't seem to show that the council was approaching this with fairness and an open mind. That goes to the 14th Amendment procedural due process claim, Your Honor. And respectfully, I would submit that the allegations that are pled by Appellant are insufficient to pass the Appellant relies heavily on. There's good precedent before us today. There's nothing to suggest from the pleadings that the council member had prejudged the revocation of the conditional use permit. Here, there was a lengthy application process that's in the record. That inquiry included questions about whether the permit holder was convicted of felony or misdemeanor charges. That's a part of the conditional use process. And so certainly the council members mentioning that at the council hearing is relevant. It's germane as to whether to revoke the conditional use permit or not. And there was also this comment that the council member didn't understand how Appellant was approved for the CUP in the first place. I mean, again, just because that statement is made doesn't mean that, in accordance with Stivers, that there was this prejudgment that was happening, that this Appellant would never have been given another shot or a fair shake. So the pleadings, as they stand right now, do not give rise to, that overcomes the presumption of honesty and integrity that case authority calls out for these kinds of council members. But all of this, of course, as I understand your argument, really only matters if we apply preclusion based on the city council's decision. But if we don't do that, would those comments even be relevant? In terms of relevance, in terms of, I don't believe that those kinds of allegations constitute a 14th Amendment claim. Yes, I don't think that, I don't think they do. So they are relevant just to put the purposes of the 12B6 standards that Appellant failed in the district court proceedings. Anything further from my colleagues? Nope. Okay. Thank you very much, Mr. Law. Mr. Weiser, are you still with us? Yes, I am. Thank you, Your Honor. All right, take it away. Yes, just a few minutes, remarks, Your Honor. To Judge Beatty's question, I believe, as to is there anything in the Patel decision that goes to overruling the Berger decision or somehow dealing with Berger decision as to close to regular business? I did discuss it at pages 20 and 21 of the opening brief. The Patel decision, the Supreme Court did discuss it. And I think they were addressing Justice Scalia's dissent and said that even if we were to assume that this is a closely regulated business, the motel industry, that the third Berger requirement requires that the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. And they found that even under that prong, the Patel ordinance did not meet that prong just because it had the language reasonable inspections during regular business hours. In this case, if you take the CUP and the certainty and regularity as to two inspections a year as a substitute for a judicial warrant, that doesn't give the certainty and regularity for third inspection or any additional inspections. So I think that it fails even under Berger and under that third test as Patel interprets it. With respect to the business license, I think maybe perhaps I didn't understand what the Judge Nelson and Judge Owens were getting at. The confusion here is that Mr. Kilgore, after the revocation, still had a business license that was issued to the city. And that was never revoked. And actually I think lasted until more than a year or two years after the revocation. So that was one of the things that I think caused confusion with Mr. Kilgore also as to whether that just limited him completely from operating. But there is a bit, I did plead it I believe in the third amendment complaint, that there was a business license that the city issued. With regards to the due process claim, I think Stivers is controlling. All you need is one councilman. You don't need the whole council. I think those remarks do raise an issue, at least of an appearance of bias. And it seems to me that one wouldn't think that a judge would make those kind of remarks while a judge was weighing the evidence. Can I ask you about those remarks? Because there's a couple different ways you can interpret it. I mean, one way of interpreting those remarks was, well, wait a second, how this person looks like they should have never qualified for a business license in the first place. You know, why did he get one? And I would say in that respect, your honor, number one, that would be, it seems to me, how you weighed is a factual issue. But even assuming that it's not, it seems to me that that was not before the council. The council was talking about a revocation of already issued CUP. That CUP took into account his police records, which were misdemeanors, not felony matters, as I recall. But I understood the council member's comment to go to, wait a second, did we actually do this right in the first place? Because it wasn't relevant. It wasn't relevant because what happened was, as I recall, and I believe it's pled in the third amendment complaint, what happened was is that the planning, the planner, city planner, or the staff was presenting the history of leading up to the issuance of the CUP indicated, well, he had this criminal record. We issued the CUP nevertheless. Now we're here before the council dealing with the issue of should it be revoked? Then the councilman interjected, well, how did you give him a CUP to begin with, with a criminal record? But it was irrelevant. It was not relevant to the issue at hand before the council. It seems to me that that weighs in favor, that these were biased remarks, or at least raised an appearance of bias. One councilman is enough under Stivers to invalidate the integrity of the proceedings. And I believe the Clements case that I cited versus Marshall County is very clear that it doesn't matter whether, even if you get the state review, there's no exhaustion requirement because it goes to the integrity of the proceedings. That's what I was mentioning earlier. And then one final point I would bring out, and I do want to say as far as the administrative mandamus action, one case that was cited by council in their answering brief was a diversity action. So whether a district court follows state limitations as far as service, that case has nothing to do with the issue at hand. In 1983 action, it seems to me the supplemental claims follow the federal claims as far as rule four, a judge can expand for good cause service under the rules. It did in this case, based on certain health problems that were medical issues that I had been facing, and then turned around after it had already discharged the OSC and dismissed for not being in compliance with the government code. So it seems to me that that's totally wrong. It follows federal rules, not the state rule. With that, I would submit your honor. Anything else for my colleagues? No? Okay. Well, thank you both, Mr. Law, Mr. Weiser for your argument briefing this case. Very interesting case. I learned a lot about the massage business in working this one up. And with that, that's the last case for argument today. And this particular panel is adjourned. Thank you, everybody. Thank you, your honor. Thank you.
judges: Owens, Nelson, Bade